IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIVE AMERICAN ARTS, INC., | ) | |
| | ) | Civil Action File No.: 07-CV-6113 |
| Plaintiff, | ) | Judge Gottschall |
| | ) | Magistrate Judge Denlow |
| vs. | ) | |
| | ) | |
| SCOTT SALES COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>DEFENDANT SCOTT SALES COMPANY, INC.'S MEMORANDUM OF FACT AND
LAW IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT FOR LACK OF
PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER ACTION
PURSUANT TO 28 U.S.C. §1404(a)</u>**

## I. SUMMARY OF ARGUMENT

a)      <u>Lack of Personal Jurisdiction</u>.

General personal jurisdiction does not exist because of the lack of continuous and systematic contacts as between Defendant Scott Sales Company, Inc. ("Scott Sales") and the State of Illinois.  Specific personal jurisdiction does not exist because the sole "contact" upon which specific personal jurisdiction is predicated -- a single internet sale of the items in question to Plaintiff, Native American Arts ("NAA") – was an act contrived by NAA for the singular reason to create a "contact" with Illinois and thus offends traditional notions of fair play and substantial justice.

b)      <u>28 U.S.C. §1404(a) Transfer</u>.

The convenience of witnesses and the ability to secure live testimony of non-party witnesses at trial, as well as other factors, decidedly weigh in favor of transferring this action to the United States District Court for the Middle District of Tennessee.  28 U.S.C. §1404(a).

## II.   <u>RELEVANT FACTS</u>

a)     <u>Facts Relating to Lack of Personal Jurisdiction</u>.

Scott Sales is a Tennessee corporation located in Nashville, Tennessee. Affidavit of James D. Scott, Jr. at ¶2 (Exhibit 1 to Motion) ("Scott Aff."). Scott Sales owns no property and maintains no office in Illinois.  No owner, officer, employee or agent of Scott Sales resides in Illinois. Scott Sales has no sales representatives whose assigned territory includes Illinois and no sales representative travels into Illinois on behalf of Scott Sales. No representative of Scott Sales has travelled to Illinois for Scott Sales to attend any sales conventions or trade shows. <u>Id.</u> at ¶3.

Scott Sales' business is the importing, purchasing from other importers, and distributing of low price point souvenirs and knick-knacks. <u>Id.</u> ¶4.[1]  Scott Sales offers its items for sale in three ways:  1) through its sales representatives (none of whom have gone to Illinois); and 2) through its taking of orders at trade shows (none of which have occurred in Illinois); and 3) through its internet website upon which items can be viewed and ordered. <u>Id.</u> at ¶5. From 2004 through 2007, Scott Sales has made the following <u>total gross sales from all of its offered items</u> to persons/entities who reside in Illinois: 2004 -- $1,204; 2005 -- $0; 2006 -- $1,376; and 2007 -- $1,451. <u>Id.</u> at ¶6. These annual gross sales involving Illinois residents amount to well below ½ % of Scott Sales' gross sales for any of these years. <u>Id.</u>

NAA sues over sixteen (16) specific products which Scott Sales offered for sale. <u>See</u> Exhibits A-P to Complaint. For the time period 2004-2007, there are only two instances in which sales of any of those items involved Illinois residents. <u>Id.</u> at ¶7. The first instance

---

[1]  Scott Sales does own two retail facilities, both of which are located in Nashville, Tennessee. Those two retail facilities, Cotton-Eyed Joe and Nashville Gifts Shop, purchase product from Scott Sales and other wholesale distributors.  Scott Aff. at ¶4.  The sales at those two retail stores are limited to customers who physically come into those stores and purchase items.  <u>Id.</u>

involved Double Features, an Effingham, Illinois entity in November 2007. But that sale occurred by virtue of a representative of that entity being present at a trade show in Gatlinburg, Tennessee, seeing the items on display at Scott Sales' booth and placing an order for various of the items with the Scott Sales' representative at that trade show; i.e., it was not an internet sale. Affidavit of Jeff Johnstone at ¶¶4-6 (attached as Exhibit 2 to Motion).

The only other sale of the items at issue in this lawsuit that involved an Illinois resident was the internet order placed on April 13, 2007 by NAA. The order placed by NAA is the only online purchase of the items in question involving an Illinois resident. Scott Aff. at ¶9. NAA ordered only items over which it knew it would sue, i.e., of the seventeen (17) items NAA ordered, sixteen (16) are Exhibits A-P to the Complaint. Id.[2]

Scott Sales is identified on its website as an importer and distributor of imported product. Scott Aff. at ¶10. The items offered by Scott Sales in a traditional "Indian" or "Southwestern" motif are offered at price points that clearly indicate the items are not Native American made. See id. and Collective Exhibits C and D to Scott Aff.

     b)     Facts Relating to Request to Transfer Pursuant to 28 U.S.C. §1404(a).

In its Initial Disclosures, NAA identifies all those who may have discoverable information regarding the dispute. See Exhibit 3 to Motion. Matthew Mullen (NAA's president, who resides in the Chicago area) is identified; all others listed by NAA are employees and customers of Scott Sales. Id. In its Initial Disclosures, Scott Sales identified, as persons likely to have discoverable information, numerous employees, all of whom would be in or near the Nashville, Tennessee area (dependent upon sales trip schedules) and two outside/independent

---

[2] The paperwork attendant to the sale of the items to NAA, as well as all other Scott Sales customers, specifies Tennessee law as applying to the sales agreement. Scott Aff. at ¶9.

contractor sales representatives, one in North Carolina and one in Florida.  Exhibit 4 to Motion and Scott Aff. at ¶11.  Attached to its Initial Disclosures, Scott Sales produced a listing of the seventy-four (74) customers which, at some point in the previous thirteen (13) months, purchased one or more of the items at issue.  Scott Aff. at ¶12 and Exhibit E thereto.[3]  Of those seventy-four (74) customers, nineteen (19) are located in Tennessee, thirty-one (31) are located in states contiguous to Tennessee, and fifteen (15) are located in the southeastern (non-contiguous) states of South Carolina and Florida.  Scott Aff. at ¶13.  The only Illinois entity buying any of the items in question in the past thirteen (13) months is NAA.  Id.[4]

Scott Sales personnel and sales representatives are expected to testify regarding the way in which the contested items were offered and/or sold (including the operation of the website) and regarding whether any customer has informed, or complained to, them that he/she believed that the items were being offered for sale in a manner that suggested they were Native American made.  Id. at ¶11.  The customers, themselves, are expected to testify regarding the circumstances surrounding their purchasing/ordering of the contested items, how those items were advertised or offered for sale, whether any of them believed that the items were being offered for sale in a manner that suggested they were Native American made, and whether any of their customers, at the retail level, have ever expressed any such belief.  Id. at ¶14.

---

[3] While 74 customers in the past thirteen (13) months may sound like a significant number, it is important to note that most of those customers only ordered one or two or the items at issue, along with other items offered by Scott Sales.  Indeed, Scott Sales has, at most, had only $14,006.30 of gross sales of the items at issue since it has offered them for sale, $503.00 worth of which involved Illinois residents (i.e., $343 gross sales to NAA and $160 to Double Feature) Scott Aff. at ¶12.

[4] Double Features, the only other Illinois entity that purchased the questioned items (and which placed its order in Gatlinburg, Tennessee), does not appear on this listing because the Double Feature November, 2006 sale pre-dates the thirteen (13) month time frame encompassed by that listing.  Scott Aff. at ¶13.

All of the documents relating to Scott Sales' purchase and/or importing of the items in question are located in Nashville. Also, at Scott Sales' location in Nashville are numerous documents relating to the operation of the website and the advertising, selling and shipping of the contested items as well as inventory information relating to those items. Also, documents in the possession of the customers which ordered the questioned items are predominately located in Tennessee and/or contiguous states. Id. at ¶15.

Based upon 2006 Judicial Caseload Profile Reports, cases in the Northern District of Illinois would take 26.4 months to progress from filing to trial, whereas cases in the Middle District of Tennessee would take 25.4 months. See Exhibit 5 to Motion.

### III. ARGUMENT

a)      Lack of Personal Jurisdiction.

Under federal law, a defendant may be personally subject to either the specific jurisdiction or the general jurisdiction of the Court. Native American Arts, Inc. v. Daniel Peterson, No. 06-C-5956 slip op (12/5/07) at 2 (copy attached).

i)      General Jurisdiction Over Scott Sales Does Not Exist.

General jurisdiction arises when a defendant maintains "continuous and systematic contacts with the forum state." Id. at 3.

Scott Sales owns no property in Illinois, has no distribution facility in Illinois, has no sales agent or representative in Illinois and only a miniscule percentage of its sales for the last four (4) years have involved Illinois individuals or entities (i.e., less than ½%). Scott Aff. at ¶6. The internet website operated by Scott Sales does allow a viewer to purchase product on line, but that internet website is not targeted deliberately at Illinois consumers. Id. at ¶5.

This Court's decision, concerning non-resident defendant Wild, in <u>Tamburo v. Dworkin</u>, No. 04C3317, 2007 WL 3046216 (N.D. Ill. Oct. 9, 2007) is dispositive of the issue of lack of "general" personal jurisdiction over Scott Sales:

> Wild's products are sold via a website . . . through which its . . . products may be purchased online. Wild does not have an Illinois distributor or agent, and approximately 1% of Wild's sales via its website are to customers located in Illinois. No facts have been adduced by the plaintiffs to suggest that Wild's website is targeted deliberately or specifically at Illinois consumers. Generally, the mere maintenance of a website, even an interactive one through which orders may be placed, is not sufficient in itself to establish general jurisdiction over a foreign defendant. [citation omitted]. Thus, Wild's maintenance of a website through which products may be ordered by Illinois customers does not constitute, in itself, sufficiently continuous and systematic business activity to establish general jurisdiction by this court.

<u>Id.</u> at 2. Accordingly, "general" personal jurisdiction over Scott Sales does not exist.

        ii)      <u>Specific Jurisdiction Over Scott Sales Does Not Exist.</u>

"Specific" personal jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." <u>Daniel Peterson</u> (slip op) at 3. However, the defendant's contacts with the forum must still meet the "minimum contacts" benchmark and exercise of personal jurisdiction over the defendant must still comport with the traditional notions of fair play and substantial justice.

A single act of a defendant can establish "specific" personal jurisdiction if that act creates a "substantial connection," as opposed to a fortuitous affiliation, with the forum state. <u>Id.</u> This Court has held that a defendant's use of an interactive website in conjunction with at least one actual sale to an Illinois citizen, can be sufficient to establish "specific" personal jurisdiction. <u>Native American Arts v. Milne Jewelry Co., Inc.</u>, No 05-C-6203  slip op. (6/16/06) at 4-5 (copy attached). "Specific" personal jurisdiction cannot be predicated, however, on a single contact

intentionally set up by a plaintiff to lure a non-resident defendant's entry in the forum.  See Jacobs/Kahn & Company v. Marsh, 740 F.2d 587, 593 n. 7 (7th Cir. 1984).

The activity of Scott Sales at issue in this suit is its offering for sale and selling of items which NAA contends falsely suggest were made by Native Americans. There have been two instances of Scott Sales selling of the questioned items involving Illinois residents:  1) November 2006 sale to Double Feature, and 2) April 2007 sale to NAA.  Scott Aff. at ¶7.

       A)      Double Feature Sale Does Not Support Exercise of Specific Personal Jurisdiction.

The contact with Illinois relating to the Double Feature sale is random, fortuitous and attenuated, and thus does not support a finding of specific personal jurisdiction.  The Double Feature sale was not an internet sale.  Rather that sale occurred in Gatlinburg, Tennessee at a trade show where a representative of Double Feature saw the questioned items[5] at Scott Sales' booth and placed an order for numerous items, including some of the items at issue in this lawsuit.  Johnston Aff. at ¶¶5-6.  Because, and only because, Double Feature was located in Illinois, Scott Sales shipped the ordered product from Nashville to Effingham, Illinois.  Thus, the contact with Illinois arising out of the Double Feature order, which was placed in Tennessee, is based solely upon the fortuitous fact that Double Feature, as opposed to being located anywhere else, was located in Illinois and thus the product ordered had to be shipped there.

Moreover, the Double Feature sale involved no "false suggestion" activity in Illinois. While Scott Sales vehemently asserts that there has been no false suggestion that its products were made by Native Americans, if such occurred in relation to the Double Feature sale, such occurred at the Gatlinburg, Tennessee trade show when the Double Feature representative

---

[5] The items displayed all had "Made in China" or "China" on the packaging and actual items.  Johnstone Aff. at ¶7.

viewed the items and placed the order.  The mere shipment of product ordered at a Tennessee

trade show to Illinois (or anywhere else) would not create a substantial relationship with Illinois

regarding a false suggestion claim when, by necessity, any such false suggestion would have

occurred at the Tennessee trade show.[6]

> B)  <u>Basing Personal Jurisdiction Upon the NAA Sale Offends Traditional Notions of Fair Play and Substantial Justice.</u>

This Court has previously ruled that maintenance of an interactive website, when coupled

with at least one online sale transaction to an Illinois resident, can support a finding of "specific"

personal jurisdiction.  <u>See e.g.</u>, <u>Milne Jewelry</u> (slip op.) at 4-5.  However,  Scott Sales is unaware

of this Court's ruling on the issue of whether "maintenance of an interactive website coupled

with one sale" comports with traditional notions of fair play and substantial justice <u>under the</u>

<u>facts of this case</u>:

> 1)  The NAA online purchase was the only online purchase by an Illinois resident of the items at issue;
>
> 2)  The NAA online purchase was made with the intent to create a "contact" and otherwise lure Scott Sales' entry into the forum; and
>
> 3)  The NAA online purchase was made by someone who was not having anything "falsely suggested" to him – i.e., he knew the products were not made by Native Americans.

A plaintiff's luring or enticing of a defendant to enter a jurisdiction does not support

assertion of personal jurisdiction if that entry into the forum is all that jurisdiction is predicated

upon.  <u>See Jacobs/Kahn & Company</u>, 740 F.2d at 592 n. 7; <u>see also</u>, <u>E/M Lubricate, Inc. v.</u>

<u>Microfral</u>, 91 F.R.D. 235 (N.D. Ill. 1981).

---

[6]  Scott Sales was not availing itself to the privileges and protections of Illinois law regarding the Double Feature sale.  The Scott Sales form invoice specifically states that the laws of Tennessee govern the transaction. Scott Aff. at ¶9.

The online sale to NAA is the only online sale of the items in question in Illinois. It is true that Scott Sales operates a website upon which orders of product can be made. But it is equally true that NAA's placement of its single online order was designed for one purpose – to create a transaction upon which it could sue and assert jurisdiction over Scott Sales. No business reason existed for NAA to place the order. Moreover, the fact that sixteen (16) of the seventeen (17) ordered items are exhibits to the Complaint clearly indicates NAA's motivations in placing the order and having the product shipped to Illinois. No doubt, the matter would be different – and Scott Sales would not be arguing the point – if other internet sales of the questioned items involved Illinois residents. Such, however, is not the case. Scott Aff. at ¶9.

Moreover, it is unreasonable for personal jurisdiction regarding NAA's "false suggestion" claim to be predicted upon a single order of product by someone who was not under any false impression that the items being ordered were made by Native Americans. It is inescapable that Mr. Mullen knew the items were not made by Native Americans when he placed the order with Scott Sales. Mr. Mullen may protest that he did not know, but such a position should not be countenanced. NAA has shown a penchant, over at least the last ten (10) years, to sue many others for alleged violations of the IACA. Therefore, it would be incredible (both literally and figuratively) to contend that NAA did not know what was or was not Native American made.

Additionally, in viewing the Scott Sales website, Mr. Mullen would had to have noticed that Scott Sales describes itself on its home page, and repeatedly throughout its website, as an "Importer and Distributor." Id. at ¶10. Moreover, the price of the items set forth on the Scott Sales website, and ordered by NAA, clearly indicate that NAA knew the items it was ordering were not Native American made because NAA, itself, knew that the authentic Native-American

goods it offered on its own website were from 10 to 30 times the price of what was purchased from Scott Sales off of its website.[7]

For these reasons, it is beyond credible dispute that NAA knew the products it was ordering from Scott Sales were not made by Native American and was ordering the products for the sole purpose of creating an "entry" into Illinois upon which NAA could assert jurisdiction and sue. Such circumstances offend traditional notions of fair play and are not reasonable and, therefore, cannot provide the basis for "specific" personal jurisdiction over Scott Sales.

## IV.   <u>TRANSFER TO MIDDLE DISTRICT OF TENNESSEE</u>

In the alternative, the action should be transferred to the Middle District of Tennessee. A transfer of venue, pursuant to 28 U.S.C. §1404(a), is appropriate where the moving party demonstrates that (1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district,[8] and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses and the interests of justice. <u>Milne Jewelry</u> (slip op) at 6-7.

As to the last of the §1404(a) considerations, this Court stated in <u>Milne Jewelry</u> the following:

> In evaluating the convenience of the parties and witnesses (often referred to as the "private interest" factors), a district court

---

[7] In its Initial Disclosure, NAA provided what appears to be print outs of its own website – "Catch Your Dreams." While Scott Sales nowhere concedes that its items are in competition with any item sold by NAA, Scott Sales has undertaken a quick comparison of the prices of some of the product. The NAA-offered product is some 10-30 times the price of the Scott Sales offered product. Scott Aff. at ¶10.

[8] Because Scott Sales' §1404(a) request is in the alternative to dismissal for lack of personal jurisdiction, it is assumed that if the Court reaches the §1404(a) analysis, that it has already determined that personal jurisdiction, and thus venue (see 28 U.S.C. §1391(c)) is proper in this district (i.e., the "transferor district"). Obviously, because Scott Sales is a Tennessee corporation and located in Nashville, Tennessee, jurisdiction and venue of this action in the Middle District of Tennessee (i.e., the "transferee district") would be proper.

> considers:  (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties.  . . . When examining the interest of justice (often referred to as the "public interest" factors), the court focuses on the efficient administration of the court system. . . . Relevant considerations here include the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale.  . . . The movant has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient.

Id. (slip op) at 7 (ellipses indicating omission of citations).

a)      NAA's Choice of Forum.

The plaintiff's choice of forum is entitled to weight, but it is not conclusive and will not defeat an otherwise well-founded §1404(a) motion. Milne Jewelry (slip op) at 8.  But the factual circumstances surrounding NAA's ability to sue in this forum – a single online order initiated by NAA for the purposes of suing in Chicago and being made by someone (Mr. Mullen) with knowledge that the items purchased were not Native American made – counsel toward giving little, if any, weight to NAA's choice of forum.

b)      Situs of Material Events.

Scott Sales' sales efforts and website are centered in and operated from Nashville. Therefore, and while Scott Sales denies any false suggestion of its items as being Native American made, any such "false suggestion" would had to have originated in Nashville. Furthermore, Nashville is where Scott Sales received the goods in question, and is from where Scott Sales shipped the items in question in fulfillment of its customers' orders.  Finally, more than any other state, Tennessee has the most customers which purchased the items in question from Scott Sales.  Scott Aff. at ¶13.

Again, the only thing that happened is this judicial district is that Mr. Mullen accessed Scott Sales' website, made one online order (i.e., the only order of the questioned items that ever occurred in this judicial district) and received the shipment of that product from Tennessee.  It is anticipated that NAA will contend that it viewed Scott Sales "falsely suggestive internet advertisements" in Chicago.  Again, however, it strains credibility past the breaking point for NAA to maintain it had anything "falsely suggested" to it when it viewed and ordered the Scott Sales product – Mr. Mullen knew the items were not Native American made.

      c)      <u>Relative Ease of Access to Sources of Proof</u>.

All of the documentary information of Scott Sales relating to this action is in Nashville, Tennessee.  <u>Id.</u> at ¶15.  That documentary information includes documents relating to the operation of Scott Sales' website, documents relating to the ordering and receiving by Scott Sales of the items in question and documents relating to Scott Sales' offering and selling the items in question to its customers.  <u>Id.</u>  Moreover, and to the extent that more of the Scott Sales customers who bought these items reside in Tennessee than anywhere else, whatever documents those Tennessee customers have relating to their purchases will also be more easily accessed if the action is transferred to Tennessee.  Id. at ¶¶13 and 15.

      d)      <u>Convenience of Witnesses</u>.

Convenience of witnesses is the §1404(a) factor viewed as having the most weight.  The party seeking transfer must specify the witnesses and set forth a general statement as to what the anticipated testimony will address.  The convenience of <u>party</u> witnesses is not a weighty consideration whereas that of <u>non-party</u> witnesses is.  While deposition testimony is an alternative, live testimony of material non-party witnesses is always preferred.  <u>Milne Jewelry</u> (slip op) at 9-10.

NAA, in its Initial Disclosures, has set the stage regarding who are the material witnesses in this case.  Exhibit 3 to Motion.  Only one individual listed by NAA, Matthew Mullen, is located in this judicial district.  The rest of the witnesses are either Scott Sales' representatives or employees, or are the customers of Scott Sales which purchased the items in question.  Id.  The overwhelming bulk of Scott Sales personnel who were involved in internet maintenance, sales, customer service or product ordering and shipment are located in Nashville, Tennessee.  Exhibit 4 to Motion and Scott Aff. at ¶11.  Those individuals will testify concerning their knowledge of the Scott Sales website, the ordering of the items at issue by Scott Sales, the offering for sale and selling of those items to Scott Sales customers, and/or whether any customer has expressed the belief that the items were offered by Scott Sales in a way that suggested the items were made by Native Americans.  Id.  These topics of expected testimony are, of course, at the core of the issues presented in this lawsuit.

Likewise, the Scott Sales customers are anticipated to testify concerning the critical topics of whether the items they ordered were offered in a manner that suggested to them that the items were made by Native Americans and whether any of their customers, at the retail level, ever expressed confusion/false suggestion in that regard.  Id. at ¶14.

Exhibit E to the Affidavit of Don Scott is a listing of customers who, in the past thirteen (13) months, purchased one or more of the questioned items.  Of those 74 customers, 19 are in Tennessee, 31 are in states contiguous to Tennessee and 15 are in southeastern states not contiguous to Tennessee (i.e., South Carolina and Florida).  None on that list, other that NAA, is

in Illinois.[9]  Clearly, convenience of the party and non-party witnesses weighs heavily in favor of transfer to the Middle District of Tennessee.  Milne Jewelry (slip op) at 9-10.

      e)     Convenience of the Parties.

Maintenance of this action in Chicago is more convenient to NAA; maintenance of this action in Nashville is more convenient to Scott Sales.  Many party witnesses (e.g., the Scott Sales employees) are located in Tennessee whereas only one (i.e., Mr. Mullen) is located in Illinois. Scott Sales is a small family-owned company, and the cost of this action, which is material to it, would be less if conducted in Tennessee.  Scott Aff. at ¶17.  NAA has demonstrated the ability to litigate its IACA claims in distant forums after §1404(a) transfers from this Court.[10] Accordingly, the convenience to the parties factor favors transfer to Tennessee.

      f)     Interests of Justice Factor.

Regarding the forum court's familiarity with applicable law, this case involves a federal law, the IACA.  All federal courts are equally competent to decide issues of federal law.  This factor, therefore, is neutral.  Milne Jewelry (slip op.) at 11.

Regarding the speed with which the matter will proceed to trial, Judicial Caseload Profile statistics for 2006 indicate a medium time from filing to trial in the Middle District of Tennessee

---

[9] The Effingham, Illinois entity Double Feature is not listed in that exhibit because its order of some of the questioned items, at the Gatlinburg, Tennessee trade show, occurred in November, 2006, more than thirteen (13) months ago.  Effingham, Illinois is located in Southern District of Illinois, some 210 miles from Chicago and some 300 miles from Nashville. Scott Aff. at ¶¶13 and 16.

[10] See Milne Jewelry case transferred to District of Utah where NAA continued the litigation  (NAA v. Milne Jewelry, #2:06-CV-00894-TC-D.Utah) and Native American Arts v. Specialty Merchandise Corporation, #05-C-952 2005 WL 2420399 (N.D. Ill.) (1404(a) transfer to Central District of California) where NAA continued the litigation.  (NAA v. Specialty Merchandise, #CV05-07889 SGL (JTLX) – C.D. Cal.).

of 25.4 months whereas it is 26.4 months in the Northern District of Illinois.  See Exhibit 5 to

Motion.  Accordingly, this factor weighs in favor of transfer to Tennessee.

Regarding the "desirability of resolving controversies in the respective local forum"

factor, Tennessee courts have a stronger interest than those of Illinois to address and regulate

actions of Tennessee corporations.  The Scott Sales website was not directed or targeted to

Illinois anymore than any other state. Moreover, the largest concentration of customers who

purchased the questioned items in the past thirteen (13) months are located in Tennessee.

Therefore, the interests of a Tennessee court to address this dispute are stronger than that of an

Illinois court and thus this factor weighs in favor of transfer.  Milne Jewelry (slip op.) at 12.

## V.    CONCLUSION

For the reasons stated, the Court should enter an order dismissing the Complaint for lack

of personal jurisdiction.  In the alternative, the Court should order the action transferred to the

Middle District of Tennessee pursuant to 28 U.S.C. §1404(a).

Respectfully submitted,

/s/ Alan F. Curley
Alan F. Curley
Robinson, Curley & Clayton, P.C.
Suite 1700
300 South Wacker Drive
Chicago, IL  60606
312-663-3100
Fax:  312-663-0303

William W. Gibson (Pro Hac Vice)
J. Graham Matherne (Pro Hac Vice)
Wyatt, Tarrant & Combs, LLP
2525 West End Avenue. Suite 1500
Nashville, TN  37203
615-244-0020
Fax:  615-256-1726

Counsel for Defendant Scott Sales Company, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2008, I electronically filed the foregoing with the Clerk

of the District Court using the CM/ECF system, which sent notification of such filing to the

following individuals:


Michael P. Mullen, Esq.
Mullen & Foster
203 N. Wabash Avenue
Suite 2300
Chicago, Illinois  60601

/s/ Alan F. Curley
Alan. F. Curley


45367262.5